UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| The Annuity Welfare Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Engineers, Local 15, 15A, 15C, and 15D, AFL-CIO by its Trustees,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>Baywood Concrete Corporation,<br>　　　　　　　　　Defendant. | 12 Civ. 3326<br><br>**OPINION** |

　　　Plaintiffs the Annuity, Welfare, Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Engineers, Local 15, 15A, 15C, and 15D, AFL-CIO (the "Trust Funds") have brought this action pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.* ("LMRA").  The action is against defendant Baywood Concrete Corporation.

　　　Plaintiffs seek to collect contributions ($59,059 in all) that defendant failed to pay towards employee fringe-benefit trust funds from July 1, 2007 through June 30, 2010.  The parties dispute whether the Collective Bargaining Agreement ("CBA") between defendant and Local 15, the Trust Funds' sponsoring union, that required the fringe-benefit payments at issue, continued to be in force during the period in question.

1

Plaintiffs now move for summary judgment.  The court finds that it does not have subject matter jurisdiction over plaintiffs' claim, because the CBA was no longer in force during the period in question.  As a result, the court dismisses plaintiffs' claim in its entirety.

**Facts**

Plaintiffs bring suit as the fiduciary for the employee fringe-benefit trust funds.  Plaintiffs claim that defendant entered into the CBA with the International Union of Operating Engineers—Local 15, 15A, 15C, and 15D (collectively, "Local 15")—on April 26, 2006.  This CBA covered the period, July 1, 2002 to June 30, 2006 and will be referred to as the "2002 CBA."

Under the 2002 CBA, defendant was required to remit fringe-benefit contributions to each of plaintiffs' Local 15 trust funds for work performed by Local 15 members.  The 2002 CBA also requires that defendant provide fringe-benefit contributions for any member of the union who holds a title, or position, with the employer (an "owner/operator").  For example, a Local 15 member who works for the defendant as an officer or director would be covered by the 2002 CBA.

To date, neither party has attempted to formally terminate the CBA.

In October 2007, defendant Baywood Concrete Corporation became a member of the Association of Concrete Contractors of New York, Inc. (the "Association").  Upon joining, defendant immediately authorized the Association

to act as its designated collective-bargaining agent in connection with Local 15/15A and Local 15D.  Subsequently, defendant entered into two separate collective-bargaining agreements with Local 15/15A and Local 15D, respectively.  These agreements cover the period of July 1, 2006 through June 30, 2010 and unlike the 2002 CBA, do not require defendant to pay fringe-benefits to owners/operators.  Notably, these agreements took effect the day after the 2002 CBA expired.  It appears as though defendant intended for these two agreements to replace the 2002 CBA.  However, neither party has made this argument in its submissions to the court.

With defendant's permission, plaintiffs' representative conducted an audit of defendant's payroll records covering the three-year period from July 1, 2007 through June 30, 2010.  The subsequent audit report dated April 11, 2011, concluded that defendant failed to pay fringe-benefit contributions and interest in the amount of $59,059.  More specifically, the audit found that defendant failed to pay these fringe-benefits for Francisco Silva, an owner/operator, who is a member of Local 15D and is also an officer at defendant's company.

Plaintiffs then filed this action on April 26, 2012, asserting that defendant failed to pay fringe-benefit contributions owed to employee fringe-benefit trust funds and breached the terms and conditions of the CBA.  On October 17, 2012, plaintiffs moved for summary judgment.

In its responsive pleadings, defendant contends that (1) the CBA expired on June 30, 2006 and (2) subsequently, defendant entered into two new agreements with Local 15/15A and Local 15D, respectively, that did not require the payment of fringe benefits to owners/operators, such as Silva.  Accordingly, defendant contends that it does not owe the alleged $59,059 in fringe-benefits for the period of July 1, 2007 through June 30, 2010.

## Discussion

29 U.S.C. § 158(d)(1) of the NLRA provides that even though a collective-bargaining agreement has start and end dates, the duty to bargain does not necessarily expire on the scheduled end date of the agreement.  In this vein, the following provision of the 2002 CBA that governs the termination or extension of the agreement is relevant:

> The employer agrees that the applicable Association shall, on behalf of the Employer, negotiate successor Collective Bargaining Agreements, amendments, renewals and extensions of the applicable Collective Bargaining Agreements and the Employer agrees to be bound by any and all amendments, renewals and/or extensions of the above referenced Association Collective Bargaining Agreements unless and until this Agreement is properly terminated by either the Employer or the Union in accordance with the renewal and/or Termination provisions of the applicable Association Collective Bargaining Agreements.

Here, the proper termination of the 2002 CBA is governed by the National Labor Relations Act ("NLRA").  The NLRA provides the following guidance on terminating a collective-bargaining agreement:

> Where there is in effect a collective bargaining agreement contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall

>   terminate or modify such contract, unless the party desiring such termination or modification—
>
>   (1) Serves a written notice upon the party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification.

29 U.S.C. § 158(d)(1).

Thus, under 29 U.S.C. § 158(d)(1), the proper way for a party to terminate a collective-bargaining agreement is by serving notice to the other party sixty days before the agreement's expiration date, or sixty days before the desired termination date.  However, the statute is silent on what happens to a collective-bargaining agreement when a party that does not intend to renew an expiring collective-bargaining agreement fails to provide the required notice of termination to the other party.  By its terms, the statute does not provide an expiration date for such an agreement.

However, there is persuasive authority in this Circuit that where a party fails to either terminate or renew an expiring collective-bargaining agreement pursuant to the notice requirements in 29 U.S.C. § 158(d)(1), the agreement only remains in effect and binding on the parties for sixty days after its expiration.  William N. Wenzel v. Edison Parking Corporation, 94-Civ-1971 (LAP), 1995 WL 135553, at *4-5 (S.D.N.Y. Mar. 29, 1995).  In Wenzel, Judge Preska explained that 29 U.S.C. § 158(d)(4) "does *not* provide that the terms and conditions of the contract are to continue indefinitely into the future.  At the absolute latest, the Agreement might persist for sixty days after the

5

expiration date." Id. at 4 (emphasis in original); see also Otley v. Sheepshead Nursing Home, 688 F.2d 883, 895 (2d Cir. 1982) (Newman concurring) ("if the party attempting to terminate at or before the expiration date gives no (d)(1) notice at all, …the contract is extended only sixty days beyond the original expiration date)."

Accordingly, if a party files suit to recover under an expired collective-bargaining agreement that was not terminated in accordance with § 158(d)(1) of the NLRA, the court will only have subject matter jurisdiction over claims that arose during the course of the agreement, or up to sixty days after its expiration date.  William N. Wenzel, 1995 WL 135553, at *2.  If the collective-bargaining agreement was not in effect during the period for which the moving party seeks recovery, then the court must dismiss the suit for lack of subject matter jurisdiction.  Id.

It is necessary to apply the statute—29 U.S.C. § 158(d)(1)—and the case-law to the present case.  Plaintiffs contend that because defendant failed to provide written notice terminating the 2002 CBA, the 2002 CBA remained valid and enforceable during the audited period of July 1, 2007 through June 30, 2010.  Thus, plaintiffs argue that barring proper termination, the 2002 CBA continues indefinitely.

This argument is without merit.  It is true that defendant did not provide the notice of intent to terminate the 2002 CBA as required by 29 U.S.C. § 158(d)(1).  However, the case-law rejects the idea that the CBA continues

indefinitely.  Id.  Case-law holds that at the latest, the 2002 CBA might persist sixty days after its nominal expiration date.  Id., at 4-5.

Thus, the court finds that the 2002 CBA continued until sixty days after its original expiration date—August 29, 2006.  Plaintiffs have filed suit over alleged deficiencies in fringe-benefit contributions to employee trust funds during the period of July 1, 2007 through June 30, 2010.  However, as the 2002 CBA was no longer in effect during this period, the court finds that it does not have subject matter jurisdiction over plaintiffs' claim.  Id., at 2.

## Conclusion

The court dismisses plaintiffs' claim for lack of subject matter jurisdiction.  This opinion resolves item No. 9 on the docket.

SO ORDERED.

Dated: New York, New York
       August 25, 2014

_____
Thomas P. Griesa
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/25/14

7